

**SIGNED this 14th day of July, 2015.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-11006-TMD |
| | § | |
| JAMES WAYNE SEE | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION

The debtor holds options to buy three tracts of property that he can exercise during the six months following his mother's death. He is currently leasing these tracts from his mother, is in possession of the tracts, and has claimed both his leasehold interest and the options as exempt under the Texas homestead exemption. Although the trustee does not object to the leaseholds as exempt, he does object to the options on the basis that they are future interests not subject to the homestead exemption. The Court denies the trustee's objection, finding that because the options are not severable from the leaseholds, the options are validly exempted.

I.   **BACKGROUND AND FACTS**

   A. **Prior proceedings**

This dispute between the trustee and the debtor arises from a settlement that resolved protracted and emotional litigation between family members that spanned two bankruptcy cases filed by the debtor, James See. James filed the first bankruptcy case in July of 2011 under chapter 7 of the Bankruptcy Code.[1] His mother, Vlasta See,[2] then filed an adversary proceeding accusing James of making false pretenses, or a false representation, or engaging in actual fraud. Based on these allegations, Vlasta asked the Court to declare that debt James owed to her should not be discharged in James' bankruptcy case.[3]

Shortly after Vlasta filed the adversary proceeding, the Court dismissed the main bankruptcy case because James failed to turn over his tax returns.[4] Although the main bankruptcy case was dismissed, the Court retained jurisdiction over the adversary proceeding and litigation continued. On the eve of trial, after almost a year and a half of intense litigation, the parties finally reached a settlement.[5] On December 3, 2013, the Court entered an agreed judgment that awarded Vlasta a non-dischargeable $150,000 judgment against James.[6]

   B. **Proceedings in this case**

Six months later, James filed this case, also under chapter 7 of the Bankruptcy Code. Vlasta filed a new adversary proceeding in the second case seeking the same relief she sought in

---

[1] *In re See*, No. 11-11770.
[2] As Vlasta See is incapacitated, her guardian and James' brother, Erwin See, filed the adversary proceeding on her behalf. *See v. See*, Adv. No. 11-01243, ECF 1.
[3] Vlasta later amended her adversary complaint to address several other disputes with James. *See v. See*, Adv. No. 11-01243, ECF 198.
[4] *In re See*, No. 11-11770, ECF 42.
[5] *See v. See*, Adv. No. 11-01243, ECF 174.
[6] *See v. See*, Adv. No. 11-01243, ECF 200.

the first case. The parties eventually submitted, and the Court approved, an agreed final judgment adopting the settlement agreed to in the first case.[7]

In addition to the discharge issues, this settlement addressed the property interests at issue here.[8] Specifically, attached to the settlement agreement are three leases and three options related to three separate pieces of property, and known to the parties as the Residence, the Home Place, and the Bottom Land.[9] The Residence comprises 2.3 acres and holds the house that, according to James' counsel, James has resided in since 1997. The Home Place comprises 38 acres of agricultural land that is adjacent to the Residence tract. The Bottom Land comprises 56 acres of agricultural land that is not adjacent to the Residence and Home Place tracts. James claimed a homestead exemption for his leasehold and option interests in all three of these tracts (collectively referred to as the "Properties").

The trustee filed an objection to James' exemption of the three options arguing that an option is a type of future interest, and that a future interest cannot support a homestead exemption claim.[10] The Court asked the parties to submit stipulations and further briefing, which they did.[11] In this briefing, James argued that the leases, which grant him present possessory interests in the tracts, are themselves exempt and cannot be severed from the options; thus the options are also exempt.[12] Notably, the trustee did not object to the exemption of the leases. Nor did the trustee object to the fact that three separate properties are claimed under the homestead exemption.[13] At the hearing on the trustee's objection, the trustee argued that an option is a

---

[7] *See v. See*, Adv. No. 14-01103, ECF 6.
[8] *In re See*, No. 14-11006, ECF 79, Ex. 8, pg. 2-60.
[9] *In re See*, No. 14-11006, ECF 79, Ex. 8, pg. 17-60.
[10] *In re See*, No. 14-11006, ECF 40 (citing *In re Brunson*, 498 B.R. 160 (Bankr. W.D. Tex. 2013)).
[11] *In re See*, No. 14-11006, ECF 79, 81, 84, 85.
[12] *In re See*, No. 14-11006, ECF 84.
[13] And nor could he. The Texas constitution provides a rural homestead can "consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon." Tex. Const. art. XVI,

3

future interest that cannot be exempted and that a debtor cannot transform non-exempt property into exempt property by simply listing both in the same piece of paper.

### C. Three tracts of land; three sets of leases and options

The option to purchase the Residence was originally entered into and recorded in 1999,[14] and James has been living in a house located on the Residence property since 1997. The remaining leases and options were entered into as part of the settlement between Vlasta and James, and the Residence option was modified in the settlement agreement to specify when and how James was to give notice of his intent to exercise the option.[15] All of the leases and options were expressly incorporated into the settlement agreement.[16]

The material terms of each of the leases and options are largely the same. Each lease:

- Contains a twelve month term that automatically renews each year. James can decide not to renew any of the leases by giving Vlasta notice thirty days before the next term begins.

- Automatically renews, unless James is in default under the terms of the lease, or James has assigned or sublet any portion of the premises.

- Terminates automatically on the date of the death of Vlasta, and becomes a month-to-month lease that expires upon:
    o termination of the lease;
    o closing of the purchase of the premises by James under the option agreement;
    o expiration of the option period; or
    o sixty days after James exercises the option.

- Prohibits James from assigning or subleasing the property.

---

§ 51; *Rancho Oil Co. v. Powell*, 142 Tex. 63, 68 (Tex. 1943) ("[A] homestead may be in one or more parcels . . . . The different tracts may be entirely disconnected from the tract upon which the home, that is the dwelling place, is situated and may, under some facts, be remote therefrom").
    [14] *In re See*, No. 14-11006, ECF 79, Ex. 8, pgs. 26-30.
    [15] *In re See*, No. 14-11006, ECF 79, Ex. 8, pg. 3.
    [16] *In re See*, No. 14-11006, ECF 79, Ex. 8, pg. 3.

- Allows Vlasta, upon default, to terminate the lease and sue for possession or damages or both.[17]

Each of the three options provides for a term of 180 days commencing on the date of Vlasta's death and that the option cannot be assigned without Vlasta's approval.[18]

The Home Place and Bottom Land leases differ from the Residence lease in a few ways. First, they provide that any cancellation of the lease is deemed a cancellation of the option[19] and James cannot recoup any rent paid for the lease.[20] Second, the Home Place and Bottom Land options provide that if James defaults under the lease, the option automatically terminates.[21] Finally, the Home Place and Bottom Land options also provide that the purchase price is determined by market value according to the Burleson County Appraisal District less the total amount of rent payments,[22] whereas the Residence option, which was entered into in 1999, sets the purchase price at $62,000.[23]

## II. LEGAL ANALYSIS

James has opted to claim Texas state exemptions, as allowed by 11 U.S.C. § 522(b)(3). Subject to certain exceptions not applicable here, a Texas homestead is "exempt from seizure for the claims of creditors."[24] In fact, "[h]omesteads are favorites of the law, and are liberally construed by Texas courts."[25] Under the Texas constitution, a rural homestead can "consist of not more than two hundred acres of land, which may be in one or more parcels, with the

---

[17] *In re See*, No. 14-11006, ECF 79, Ex. 8, pgs. 17-23 (Residence lease); 31-34 (Home Place lease); 46-49 (Bottom Land lease).
[18] *In re See*, No. 14-11006, ECF 79, Ex. 8, pgs. 26 (Residence option); 37 (Home Place lease); 52 (Bottom Land lease).
[19] *In re See*, No. 14-11006, ECF 79, Ex. 8, pgs. 32 (Home Place lease); 47 (Bottom Land lease).
[20] *In re See*, No. 14-11006, ECF 79, Ex. 8, pgs. 33 (Home Place lease); 48 (Bottom Land lease).
[21] *In re See*, No. 14-11006, ECF 79, Ex. 8, pgs. 37 (Home Place lease); 53 (Bottom Land lease).
[22] *In re See*, No. 14-11006, ECF 79, Ex. 8, pgs. 38 (Home Place lease); 53 (Bottom Land lease).
[23] *In re See*, No. 14-11006, ECF 79, Ex. 8, pg. 26.
[24] Tex. Prop. Code § 41.001(a) (2001).
[25] *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 316 (5th Cir. 2003).

improvements thereon."[26] In fact, a debtor may exempt separate and disconnected tracts of land, as long as they do not exceed 200 acres.[27] To exempt separate tracts of land, the debtor just needs to "reside on part of the property and use the property for purposes of a home" and use the other tracts "for the support of the family."[28]

The issue here is whether Texas homestead law permits James to exempt his options to purchase the Residence, the Home Place, and the Bottom Land. It is the trustee's burden to show that the claimed exemption is improper.[29]

### A. The options are not present possessory interests

Generally speaking, a debtor can only claim a homestead exemption in property if he has a present possessory interest in the property.[30] Although courts in Texas have held that an option to purchase land creates an interest in land,[31] unsurprisingly, no court has found that an option creates a present possessory interest in land. An option to purchase land is akin to a future interest and future interests generally receive no protection under homestead law.[32] Here, the options, standing alone, do not give James a present possessory interest in the Properties and therefore, viewed on their own, cannot be exempted under Texas homestead law. The difficult

---

[26] Tex. Const. art. XVI, § 51.
[27] *Rancho Oil Co. v. Powell*, 142 Tex. 63, 68 (Tex. 1943) ("[A] homestead may be in one or more parcels . . . . The different tracts may be entirely disconnected from the tract upon which the home, that is the dwelling place, is situated and may, under some facts, be remote therefrom.")
[28] *Riley v. Riley*, 972 S.W.2d 149, 154 (Tex.App.—Texarkana 1998, no writ).
[29] Fed. R. Bankr. P. 4003(c).
[30] *In re Brunson*, 498 B.R. 160, 163 (Bankr. W.D. Tex. 2013) (citing *Laster v. First Huntsville Props.*, 826 S.W.2d 125, 130 (Tex. 1991) ("[O]ne who holds only a future interest in property with no present right to possession is not entitled to homestead protection in that property."))
[31] *MPH Production Co., Inc. v. Smith*, 2012 WL 1813467 (Tex App. —Texarkana 2012) (citing *Madera Prod. Co.*, 107 S.W.3d at 660 (venue dispute); *Hitchcock Props. v. Levering*, 776 S.W.2d 236, 238–39 (Tex.App. —Houston [1st Dist.] 1976, writ denied)).
[32] *Brunson*, 498 B.R. at 163.

6

question is whether the trustee can sever the options from the leases, which do grant James present possessory interests in the Properties.[33]

### B. The options cannot be severed from the leases

Under Texas law, according to the Fifth Circuit, "a severable contract 'includes two or more promises which can be acted on separately such that the failure to perform one promise does not necessarily put the promisor in breach of the entire agreement.'"[34] In Texas, "a contract is divisible, or severable, when one party's performance consists of more than one 'distinct and separate item and the price paid by the other party is apportioned to each item.'"[35] Whether a contract can be severed depends primarily on:

(1) the intention of the parties;

(2) the subject matter of the agreement; and

(3) the conduct of the parties.[36]

These three aspects of the party's relationship, then, will determine whether each lease and option should be viewed as separate and independent agreements, or as one unified and unbreakable agreement.

---

[33] One could argue that James cannot claim a homestead exemption in the Residence Lease because (1) Vlasta claims a homestead interest in the same property and (2) the Residence Lease is non-exclusive because it specifically allows others to use the shop located on the property. However, the trustee did not make this argument. Besides, the undisputed facts suggest that Vlasta has no intention of returning to the property and James appears to have exclusive possession of the rest of the property.

[34] *Stewart Title Guaranty Co. v. Old Republic Nat'l Title Insurance*, 83 F.3d 735, 739 (5th Cir. 1996) (quoting Black's Law Dictionary 1373-74 (6th ed. 1990).

[35] *Stewart Title Guaranty Co. v. Old Republic Nat'l Title Insurance*, 83 F.3d 735, 739 (5th Cir. 1996) (citing *In re Ferguson*, 183 B.R. 122, 124 (Bankr. N.D. Tex. 1995) (quoting *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex.App.—Fort Worth 1991, no writ))).

[36] *Stewart Title Guaranty Co. v. Old Republic Nat'l Title Insurance*, 83 F.3d 735, 739 (5th Cir. 1996); *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex.App—Forth Worth 1991, no writ).

**1. <u>Intent of the parties</u>**

"[W]hether [an agreement] is entire or severable turns on the parties' intent at the time the agreement was executed, as determined by the language of the contract and the surrounding circumstances."[37] The court should consider "whether or not the parties would have entered into the agreement absent the [severed] parts."[38]

The only direct evidence of the parties' intent on this issue is the language indicating that the leases and the option agreements are expressly incorporated into the umbrella document that covers all three tracts: the settlement agreement. The parties resolved protracted litigation by negotiating each of the documents referred to in, and made a part of, the settlement agreement and, absent testimony to the contrary (of which there was none), the Court will presume that each was a necessary part of the settlement, and that the parties therefore would not "have entered into the agreement absent the [options]."

In addition, the structure of the settlement agreement, and the language used in the documents, both provide a pretty clear, albeit indirect, indication of the parties' intent. The settlement agreement accomplishes two tasks that serve as consideration for each other but, upon closing of the settlement, are independent of one another. First, the settlement agreement establishes forbearance on collection of the judgment held by Vlasta against James. Second, the settlement agreement specifies the terms upon which James will have the right to rent, and ultimately buy, the Properties. The forbearance agreement contained in the settlement agreement

---

[37] *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 333 (5th Cir. 1987).
[38] *McFarland v. Haby*, 589 S.W.2d 521, 524 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.) (holding that contract was unseverable where party would not have signed contract absent illegal parts).

is independent of the rights to lease and buy the Properties, in that a default on the forbearance agreement will not be a default under, or otherwise affect, the lease or the option.[39]

In contrast, the leases and options are closely related to each other. First, a default on the lease will allow Vlasta to terminate the lease and the option, at least as to the Home Place and Bottom Land properties. Second, the option terms for those two properties, while not directly specified in the lease, are in an addendum to the lease that is "made a part" of the lease. Finally, the option term for all three properties begins when each lease ends, on Vlasta's death. Thus, the fact that there is a cross-default clause and the fact that the term of one ends when the other begins means that they dovetail together and are intended to seamlessly operate to allow James to at first lease and then eventually buy the Properties. That the lease and option are expressly integrated, cross-defaulted (as to two of the tracts), and have back-to-back terms, strongly implies that the parties' intent was to make them integrated and non-severable.[40]

The fact that the Residence lease and option differ in some ways from the arrangements for the other two tracts does not alter this conclusion. In particular, the fact that a default under the Residence lease does not result in a default under the Residence option does not make this lease severable from this option. A default under the Residence Lease would imperil the homestead protection for all three tracts; thus, a cross-default clause is not necessary. Put another way, because James's possession of the Residence tract establishes the homestead protection for

---

[39] *In re See*, No. 14-11006, ECF 79, Ex. 8, pgs. 2-3 (Vlasta's remedy if James fails to make his payments under the Judgment is set forth in paragraph 2 as follows: "In the event James fails to timely make [a payment on the Judgment], Vlasta may immediately and without further notice take all actions allowed by law to collect the remaining balance of the Judgment. James and Vlata agree that upon Vlasta's death, her executor . . . may offset the remaining amounts due under the Judgment against any distributions James is due from the See Family Trust or any inheritance available to James as a result of Vlasta's death.")

[40] In contrast, the lease/option arrangements were designed to operate independently of one another, in that performance on one tract is not dependent on performance on either of the other tracts. Thus, if James later determined that one tract was burdensome, he could elect to not renew the lease as to that tract, and not exercise the option for that tract, and yet retain his rights to lease and elect to buy the other two tracts. Of course, he will have to maintain his possession of the Residence tract to maintain homestead protection for all three tracts.

the other two leases, the Residence lease is, as a matter of law, integral to the exercise of all three options.

### 2. Subject matter of the agreement

The subject matter is the transfer of an interest in several pieces of property to James, and his retention of that interest as a homestead, as part consideration for the settlement. Taken together, the leases grant James a present possessory interest in the property, while the options give James future interests in the form of options to purchase the properties on Vlasta's death. Even though the parties structured the transfer of the property to convey it to James in two stages, the subject matter of the documents is the same: the transfer of an interest in property. And that transfer can only happen if the lease and option both operate one after the other.

From a broader perspective, the settlement renders a debt owed by James to Vlasta non-dischargeable. But James's failure to make payments on that debt is not an event of default on the leases, nor will it vitiate the options. This suggests that while Vlasta did not want James's default on the judgment payments to prevent him from getting the properties upon her death, she did want James to earn ownership of the Properties by at least making his payments under the leases during her lifetime. And, again, James cannot get ownership in the manner intended by the settlement unless both lease and option operate together.

Thus, the subject matter of the agreement can only be accomplished if the leases and options are treated as one non-severable agreement.

### 3. Conduct of the parties

The parties' conduct in completing the settlement is instructive. The settlement was reached on the eve of trial. The parties appeared at a status conference and announced the terms

of a Rule 11 settlement agreement under seal.[41] Shortly thereafter, Vlasta filed a motion that sought to enforce the terms of the Rule 11 agreement because a dispute arose over when James would have the option of purchasing the Properties. James wanted the option to purchase the Properties immediately and Vlasta argued that they had previously agreed that he would have the option to purchase the Properties only upon her death.[42] The Court entered an order that compelled James to sign the settlement agreement drafted by Vlasta, which gave James the option to purchase the Properties upon Vlasta's death.[43] Thus, there was no dispute that James would have the option to buy the Properties; the only question was when. At Vlasta's insistence, the options would not commence until after her death, and until then James would be limited to a right to lease the Properties. In this way, the leases and options were integral to the final and conclusive resolution of the dispute.

### C. Because the leases are exempt, the non-severable options are also exempt

The trustee argues that even if the options are integrated with the leases, the Court should nonetheless carve away any non-exempt property from the exempt lease and let him sell it. The trustee analogized the situation in this case to a situation where a single deed conveys two properties across town from one another to a debtor and the debtor resides in one of them. The trustee asserts that if the Court allows James to exempt the options because they are integrated with the leases, it would be like allowing the debtor in his analogy to exempt both houses even though he only resided in one of them. The Court disagrees.

In the trustee's analogy, the debtor would never be able to claim a homestead exemption in both properties because he does not have a present possessory interest in the non-residence

---

[41] *See v. See*, Adv. No. 11-01243, ECF 174.
[42] *See v. See*, Adv. No. 11-01243, ECF 182.
[43] *See v. See*, Adv. No. 11-01243, ECF 193.

property. But unlike the debtor in the trustee's analogy, James does have the requisite possessory interest in all of the Properties here. James has been residing on the Residence tract since 1997 and is using the other tracts to farm in support of his family. Thus, all three tracts are properly included in his exempt homestead by virtue of the leases. Although the options are future interests, they are future interests in the same properties that are subject to the exempt leaseholds. Because the leases and options are integrated and cannot be severed, the present possessory interests in the properties are effectively merged with the future interests and James can properly exempt both.[44]

The trustee points out that this Court in *Brunson* and the bankruptcy court in *Aguirre*—both Western District cases—refused to allow a debtor to exempt a future interest by virtue of a present possessory interest.[45] However, in both *Brunson* and *Aguirre*, the debtor's present possessory interest in the property was subject to a life estate. The determinative issue in both cases was that there could be a "gap" in between the debtor's leasehold and future interests if the life estate holder wished to exclude the debtor from the property. That is not the case here. James' leasehold interest is not subject to a life estate and, absent default under the leases, Vlasta has no right to exclude James from the Properties; thus, there is no gap between James' leasehold interests and options.

Also unlike the trustee's analogy, the Court is not finding that a debtor can transform a non-exempt interest into an exempt interest merely by linking it with an exempt interest in the same piece of paper. The Court is instead ruling that on the facts before it, the debtor's future

---

[44] *See In re Eskew*, 233 B.R. 708 (Bankr. W.D. Tex. 1998) (finding that the debtor's sole possession of the property by virtue of a lease merged with his future interest in the property so the future interest could be exempted).
[45] *In re Brunson*, 498 B.R. 160, 163 (Bankr. W.D. Tex. 2013); *In re Aguirre,* No. 12–51304 (Bankr.W.D.Tex.2012) (King, C.J.).

12

interest in the Properties cannot be severed from his present possessory interest in the Properties and so both are exempt.

### III. CONCLUSION

As the options cannot be severed from the exempt leases, the options are also exempt; thus, the Court finds that the trustee's objection to the exemption should be denied.